UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

HAROLD F. BUTLER III,      )
                                    )
        Petitioner,      )
                                    )
v.                           )     No.:   3:20-CV-141-TAV-HBG
                                    )
KEVIN GENOVESE,      )
                                    )
        Respondent.    )

## MEMORANDUM OPINION

Petitioner Harold F. Butler III ("Petitioner"), a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee judgments of conviction for first-degree felony murder, attempted first-degree premeditated murder, attempted especially aggravated robbery, and employment of a firearm during the commission of a dangerous felony [Doc. 1]. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied.

## I.    SUMMARY OF RELEVANT EVIDENCE & PROCEDURAL HISTORY

On June 28, 2010, Petitioner, along with John Simpson, Steven Ballou, and Unjolee Moore, attempted to rob Bernard Hughes outside of his Chattanooga, Tennessee apartment. *State v. Butler*, No. E2014-00631-CCA-R3-CD, 2015 WL 2233122, at *1 (Tenn. Crim. App. May 11, 2015), *perm. appeal denied* (Tenn. Sept. 17, 2015) ("*Butler I*"). Hughes and his friend, Timothy Westfield, unsuccessfully tried to fight off the assailants, but Hughes was shot to death and Westfield was wounded. *Id.*

In April 2011, a Hamilton County Grand Jury indicted Petitioner and the three other individuals on one count each of felony murder, first-degree premeditated murder, attempted especially aggravated robbery, attempted first-degree murder, and employment of a firearm during the commission of a dangerous felony. *Id.* Petitioner proceeded to trial, and the Tennessee Court of Criminal Appeals ("TCCA") summarized the proof presented as follows:

> [O]n the evening of June 28, 2010, Timothy Westfield, Myra Collier, and Cindy Cross were visiting their friend, Bernard Hughes, at his apartment on Oakwood Drive in Chattanooga. Shortly before 11:00 p.m., someone knocked on Mr. Hughes's front door. Mr. Hughes looked through the peephole on the door and turned back to Mr. Westfield with a "peculiar" look on his face. Mr. Hughes then opened the front door. Mr. Westfield testified that he saw two men standing outside the front door; one man, later identified as the defendant, was wearing a ski mask, a black baseball cap, a black mask, a black jacket, and black pants, and that man ordered Mr. Hughes to "lay it down," which Mr. Westfield interpreted to mean that the men were there to rob Mr. Hughes. Mr. Westfield identified the other man as John Simpson.
>
> Mr. Hughes immediately ran outside and closed the front door behind him. Mr. Westfield instructed Ms. Collier and Ms. Cross to go upstairs, and Mr. Westfield hurried outside. As soon as Mr. Westfield appeared outside, he noticed that Mr. Hughes was attempting to fight off both of the would-be robbers. The defendant then raised a handgun and fired two shots at Mr. Westfield, striking him in his left forearm and right ring finger. Mr. Westfield briefly lost consciousness. When he regained consciousness, he saw a silver Nissan Maxima pull up, saw someone get into the Maxima, and saw the car pull away. Mr. Westfield attempted to render aid to Mr. Hughes, who was lying in a pool of blood on the front porch just outside his front door, and Mr. Westfield yelled for Ms. Collier and Ms. Cross to call 9–1–1. Mr. Westfield retrieved a blanket from the sofa in Mr. Hughes's apartment and used it to cover Mr. Hughes's body. The medical examiner, Doctor James Metcalfe, testified that gunshot wounds to Mr. Hughes's head and chest caused his death and that the manner of death was homicide.
>
> Mr. Westfield testified that he had never seen Mr. Simpson prior to June 28 but that he had seen the defendant on several prior occasions, including

2

during the time period in which both the defendant and Mr. Westfield had attended barber college together. Mr. Westfield admitted at trial that he initially told law enforcement officers that he did not know either of the men who attempted to rob Mr. Hughes, but he later identified the defendant, explaining that both he and the defendant have very distinctive eyes and noses. Mr. Westfield stated that he was "an artist" and that he paid "very close attention to detail." Mr. Westfield explained that he and the defendant both share a "high bridge" on their noses, which, according to Mr. Westfield, is uncommon among African–Americans and is usually a sign of "Indian heritage."

Chattanooga Police Department ("CPD") Officer Ken Burnette testified that, when he responded to the crime scene on June 28, he collected two .45–caliber shell casings and one live round of .45–caliber ammunition. He also collected one size-eight athletic shoe and a white baseball cap. He later processed a gold Nissan Maxima owned by Unjolee Moore. In the trunk of the Maxima, Officer Burnette found a pair of size eight-and-a-half Jordan athletic shoes and a ski mask, and he located a light blue bandana on the rear floorboard of the vehicle. Mr. Westfield testified that the size–8 shoe collected from the crime scene belonged to the defendant. Ms. Collier explained that Steven Ballou was her ex-boyfriend and that she knew Mr. Moore only by association. Ms. Collier recalled that on one prior occasion, Mr. Moore and Mr. Ballou had stopped by Mr. Hughes's apartment when Ms. Collier was visiting him. Ms. Collier testified that she did not know either Mr. Simpson or the defendant.

John Simpson testified as a witness for the State and denied that he knew who had killed Mr. Hughes. Over the defendant's objection, the trial court allowed the prosecutor to introduce the prior recorded statement Mr. Simpson made to law enforcement officers on July 15, 2010, in which Mr. Simpson stated that the defendant had, in fact, shot and killed Mr. Hughes.

CPD Sergeant Michael Wenger testified that, following an interview of Mr. Moore, he obtained arrest warrants for Mr. Simpson and the defendant. The defendant turned himself in to authorities on July 14, and Mr. Simpson was arrested on that same date. Sergeant Wenger interviewed Mr. Simpson on July 15 after fully advising him of his rights, and Mr. Simpson executed a written waiver of those rights. Sergeant Wenger testified that he did not threaten or coerce Mr. Simpson and that he did not discuss any potential "deals" with Mr. Simpson prior to his statement.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant chose not to testify but did elect to present proof. Doctor Jeffrey Neuschatz, a professor of psychology at the University of Alabama at Huntsville, testified as an expert in the area of eyewitness identification. Doctor Neuschatz addressed the fallacies inherent in eyewitness identification and explained the concept of unconscious transference, wherein a person views a suspect in a lineup and selects that individual simply because the suspect looks familiar but not because the suspect actually committed the crime.

*Id*. at *1-2 (footnote omitted). Following the jury's deliberations, Petitioner was convicted of felony murder, attempted especially aggravated robbery, attempted first-degree murder, and employing a firearm during the commission of a dangerous felony.[1] *Id*. Petitioner was sentenced to life imprisonment for his felony murder conviction, and a consecutive thirty-one years for his other convictions. *Id*. at *2.

Petitioner appealed to the TCCA, which affirmed the judgments. *Id*. at *1. The Tennessee Supreme Court denied discretionary review. *Id*.

Thereafter, Petitioner filed a petition for post-conviction relief in the Hamilton County trial court. *Butler v. State*, No. E2018-00914-CCA-R3-PC, 2019 WL 4464652, at *2 (Tenn. Crim. App. Sept. 18, 2019), *perm. appeal denied* (Tenn. Feb. 19, 2020) ("*Butler II*"). The trial court appointed Petitioner post-conviction counsel, who filed several amended petitions. *Id*. The court held an evidentiary hearing, where Petitioner called his trial counsel to testify about his representation. *Id*. at *4. Counsel testified that the best plea offer Petitioner received was to serve fifteen years of imprisonment for second-degree

---

[1] The State did not proceed to trial on the first-degree premeditated murder charge, although the record does not reflect when this charge was dropped. *Butler I*, 2015 WL 2233122, at *2 n.3.

4

murder, but that he conveyed the offer and Petitioner was uninterested in pleading guilty. *Id.* at \*5.  Counsel also recalled advising Petitioner about his right to testify at trial.  *Id.* Counsel advised Petitioner not to testify because counsel "did not think the jury would find Petitioner credible."  *Id.*  Counsel stated he did not base his advice on Petitioner's misdemeanor history.  *Id.*

Counsel recalled co-defendant Simpson testifying at Petitioner's trial.  *Id.* at \*4. Counsel testified that before trial, he reviewed Simpson's prior statements to police and prepared to cross-examine Simpson concerning inconsistencies between his statements and the physical evidence.  *Id.*  Counsel recalled that Simpson, while testifying at Petitioner's trial, recanted his previous statement that incriminated Petitioner.  *Id.*  Counsel stated he made the decision to limit his cross-examination of Simpson because he was unsure what Simpson might say under further cross-examination.  *Id.*  Counsel explained that in continuing to question Simpson, he "risked [muddying] those waters as well as [risking Simpson] changing his mind again and testifying in accordance with the statement and saying things that would be damaging" to Petitioner.  *Id.*  Following the evidentiary hearing, the trial court denied relief in a written order.  *Id.* at \*2-6.

Aggrieved, Petitioner appealed to the TCCA, raising for the first time a claim that the State knowingly elicited false testimony from co-defendant Simpson at trial.  *Id.* Petitioner also raised several claims of ineffective assistance of trial counsel, alleging, *inter alia*, that counsel failed to interview key witnesses, investigate Petitioner's alibi, and

5

preserve Petitioner's cell phone records. *Id*. at *7-9. The TCCA affirmed the judgment, and the Tennessee Supreme Court denied discretionary review. *Id*. at *1.

Thereafter, Petitioner filed a timely petition for writ of habeas corpus raising the following claims, as reorganized and paraphrased by the Court:

Claim 1:     False testimony from John Simpson during trial.
Claim 2:     Improper standard applied by TCCA on post-conviction appeal.
Claim 3:     Ineffective assistance of counsel in connection with:
             a.     Pretrial investigation,
             b.     Plea offer,
             c.     Cross-examination of co-defendant Simpson,
             d.     Advice regarding Petitioner's right to testify, and
             e.     Post-conviction proceedings.
Claim 4:     Actual Innocence

[Doc. 1]. The Court ordered Respondent to answer or otherwise respond to the petition, and Respondent complied by filing an answer on June 24, 2020 [Doc. 10]. Petitioner submitted a reply to the answer on July 23, 2020 [Doc. 11]. This cause is ripe for review.

## II.     LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

6

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Federal habeas review is also limited by the doctrine of procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the

7

dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, where the prisoner can show cause for the default and actual resulting prejudice, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice because the petitioner is actually innocent. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules. *See Coleman,* 501 U.S. at 753. The "prejudice" sufficient to overcome a default must be actual, not merely possible. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original).

While the ineffective assistance of counsel can serve as "cause" for a defaulted claim, *see Coleman*, 501 U.S. at 753, appellate counsel's failure to raise a meritorious claim of ineffectiveness by trial counsel may render the claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, for an ineffective assistance of appellate counsel to serve as cause for a default, that claim must itself have been exhausted in the State courts before it is presented in federal habeas. *See id.* at 453 ("[A]n

8

ineffective-assistance-of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted[.]").

Generally, errors of post-conviction counsel cannot serve as "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 752. An exception to this rule was established in *Martinez v. Ryan*, which held that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The Supreme Court has described the *Martinez* exception as containing the following requirements:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 13-14, 16-17).

Therefore, when considering an ineffective assistance of trial counsel claim under *Martinez*, a petitioner must show the ineffectiveness of post-conviction counsel and "the 'substantial' nature of his underlying [ineffective assistance of trial counsel] claims." *Woolbright v. Crews*, 791 F.3d 628, 637 (6th Cir. 2015). A substantial claim is one that "has some merit." *Martinez*, 566 U.S. at 14. Inversely, a claim is insubstantial if it "does not have any merit or. . . is wholly without factual support." *Id*. at 15-16.

9

A determination of whether an ineffective assistance of counsel claim is substantial requires a federal court to examine the claim under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a conjunctive, two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. at 687. Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. This Court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id*. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id*. at 691.

While the *Strickland* standard governs eventual review of the merits of an ineffective assistance of counsel claim, the question of whether an ineffective assistance of

counsel claim is substantial is more akin to a preliminary review of the *Strickland* claim to determine whether a certificate of appealability should issue. *Martinez*, 566 U.S. at 14-15. Therefore, a court may conclude that the petitioner has raised a substantial claim where the resolution of the claim would be "debatable amongst jurists of reason," or where the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003). If the petitioner can successfully demonstrate cause and prejudice of post-conviction counsel under this preliminary review, the final step is for the district court to evaluate the underlying ineffective assistance of trial counsel claims on the merits. *Atkins v. Holloway*, 792 F.3d 654, 659–60 (6th Cir. 2015). With these standards in mind, the Court considers Petitioner's claims for relief.

## III.   DISCUSSION

### A.     False Testimony

In his first claim for relief, Petitioner argues that the trial court erred in ruling that the State did not elicit false testimony from co-defendant Simpson [Doc. 1 p. 6-7]. Petitioner first raised this issue during post-conviction proceedings [*See* Doc. 7-23 p. 82-90]. The TCCA determined the issue was waived, as Petitioner failed to present it on direct appeal. *Butler II*, 2019 WL 4464652, at *8; *see also* Tenn. Code Ann. § 40-30-106(g) (stating issue is waived if not raised in earlier proceeding where it could have been raised). Respondent asserts that Petitioner's waiver of this issue in State court precludes this Court's review of the claim [Doc. 10 p. 9-10].

11

As the Court noted above, failure to comply with a State procedural rule will foreclose habeas review of a claim if the decision of the state court rested on the state-law rule, and it is independent of the federal question and adequate to support the judgment. *See, e.g., Walker v. Martin*, 562 U.S. 307, 315 (2011). To determine whether a habeas claim is precluded by the failure to observe a state procedural rule, a reviewing court must determine: (1) whether an applicable rule exists with which the petitioner failed to comply; (2) whether the state courts actually enforced the rule; (3) whether the rule is an adequate and independent state rule on which the State can rely to foreclose review of the federal claim; and (4) whether cause exists for the petitioner's failure to follow the rule, and that he was prejudiced by the alleged error. *Maupin*, 785 F.2d at 138.

The waiver rule relied upon by the TCCA, Tenn. Code Ann. § 40-30-106(g), constitutes a firmly established and regularly enforced independent rule that precludes a federal habeas court's review of the instant claim. *See, e.g., Cone v. Bell*, 243 F.3d 961, 969 (6th Cir. 2001), *overruled on other grounds by Bell v. Cone*, 535 U.S. 685 (2002) (finding Tennessee's waiver statute to be independent and adequate state rule that is regularly enforced); *Ralph v. Sexton*, No. 4:13-CV-53-HSM-SKL, 2016 WL 4574682, at *10 (E.D. Tenn. Sept. 1, 2016) (finding Tenn. Code Ann. § 40-30-106(g) "an adequate and independent state ground sufficient to foreclose habeas review"); *Koffman v. State*, No. M2009-00951-CCA-R3-PC, 2010 WL 3774444, at *3 (Tenn. Crim. App. Sept. 29, 2010) (finding claim waived where not asserted to post-conviction court). Because the rejection of this claim in State court was based on a State-law rule independent of the federal

12

question and adequate to support the judgment, this claim is procedurally defaulted absent a demonstration of cause and prejudice, or that a fundamental miscarriage of justice would result from failure to consider this claim. *See Coleman*, 501 U.S. at 738; *Walker*, 562 U.S. at 315; *see also Cone*, 243 F.3d at 969.

In his reply, Petitioner argues that post-conviction counsel was ineffective for failing to raise this issue as an ineffective assistance of counsel claim [Doc. 11 p. 1-2]. However, the instant petition does not raise this issue as an ineffective assistance of counsel claim, it raises the issue as a substantive claim. Although Petitioner cites to *Martinez* to plead exception to the rule of procedural default, even if Petitioner had raised this claim as ineffective assistance of counsel, *Martinez*'s holding does not extend to cover defaulted claims of ineffective appellate counsel. *See, e.g., Martinez*, 566 U.S. at 16; *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (noting "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel").

The Court notes that Petitioner attempts to raise, as a separate independent claim, that failure to consider this claim would result in a fundamental miscarriage of justice.[2] The Supreme Court has held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural

---

[2] The Court addresses this as an independent claim in Part III.D., *infra*.

default." *Murray*, 477 U.S. at 496. Accordingly, the Court will consider whether Petitioner has met this exception to his otherwise defaulted claim.

To excuse a default on the basis of the fundamental-miscarriage-of-justice exception, Petitioner must present "new reliable evidence[,] whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that, when considered in conjunction with all the evidence, makes it "more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 327-28, 324 (1995)). It is a standard that requires factual — not legal — innocence. *Bousley*, 523 U.S. at 623. Petitioner's argument does not meet this standard, but rather, merely questions the reliability of Simpson's pre-trial testimony that was introduced into evidence. Accordingly, the Court finds this claim procedurally defaulted.

Moreover, even if this claim were not defaulted, it is without merit. A prosecutor has a duty to correct false testimony that could "in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal quotation marks omitted). To prove that a prosecutor breached this duty, a petitioner must demonstrate that: (1) the statement was actually false; (2) it was material; and (3) the prosecution knew it was false. *See, e.g., Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). As both the TCCA and the post-conviction court noted, credible, corroborated proof linked Petitioner to the crimes, and therefore, Petitioner failed to establish that the State presented knowingly false testimony in introducing Simpson's pre-trial statements. *See, e.g., Butler*

14

*II*, 2019 WL 4464652, at * 8.[3]  Therefore, the Court finds that this claim is procedurally defaulted and otherwise does not warrant relief.

### B.    Improper Standard Applied by TCCA

Petitioner also alleges that the post-conviction court improperly used a "clear and convincing" standard of review in assessing claims [Doc. 1 p. 11].  Petitioner states that while allegations of fact must be proven by clear and convincing evidence, legal conclusions must only be found by a "reasonable probability," *see, e.g., Williams*, 529 U.S. at 390-93.  Therefore, he claims, the court violated constitutional law by requiring legal conclusions to be proven by clear and convincing evidence [*Id*. at 12].

Before conducting its analysis as to Petitioner's ineffective assistance of counsel claims, the TCCA recited the applicable burden of proof Petitioner bore for establishing the factual allegations underlying his claims.  *Butler II*, 2019 WL 4464652, at *7.  That is,

---

[3]  The TCCA noted:

[T]he post-conviction court found that the jury returned a verdict of guilt based in part on the following evidence that corroborated Simpson's testimony: Westfield's initial description of the shooter, which matched the Petitioner; Westfield's initial description of the shooter matched the Petitioner more than any of the other suspects; the general agreement between Westfield's and Simpson's accounts of the events; the shoe found at the scene was the Petitioner's size and not the size of any of the other suspects or the victims; DNA on the shoe did not exclude the Petitioner or Westfield but excluded the other suspects; and the possibility from the pre-search disturbance of earth behind the Petitioner's residence that Simpson was correct in that firearms had been buried behind the residence. The court also found that Simpson's inculpation of himself and the Petitioner was consistent with Moore's inculpation of Simpson and the Petitioner.

*Butler II*, 2019 WL 4464652, at *8.

15

Petitioner had to "prove the factual allegations contained in the post-conviction petition by clear and convincing evidence." *Id.* (citing Tenn. Code Ann. § 40-30-110(f)).

State courts are presumed "to know and follow the law," and "readiness to attribute error is inconsistent" with that presumption. *Holland v. Jackson*, 542 U.S. 649, 655 (2004). In *Holland*, the Sixth Circuit granted habeas relief because it found that "the state court acted contrary to federal law by requiring proof of prejudice by a preponderance of the evidence rather than by a reasonable probability." *Id.* at 654. The Supreme Court reversed and held that the Sixth Circuit ignored the presumption that state courts know and follow the law. *Id.* at 655. It noted that the Sixth Circuit granted habeas relief based on three passages in the State-court opinion, which the Court found did not contradict federal law when the passages were read in context. *Id.* at 654-55. Specifically, regarding the "preponderance" language, the Court found the "statement is reasonably read as addressing the general burden of proof in postconviction proceedings with regard to factual contentions[.]" *Id.* at 654.

The Sixth Circuit later confronted the issue Petitioner presents here in *Johnson v. Genovese*, 924 F.3d 929 (6th Cir. 2019), where the Petitioner cited two sentences in the TCCA's opinion to support his argument that the decision regarding his claim of ineffective assistance during plea negotiations contradicted clearly established federal law. *Id.* at 934. Both the district court and the Sixth Circuit rejected the petitioner's argument. *Id.* at 936. The Sixth Circuit reasoned that the "clear and convincing evidence" language came immediately after the TCCA's listing of "three pieces of evidence which suggest[ed] the

16

petitioner would not have accepted any plea offer." *Id.* (internal quotations omitted). Thus, it found, when read in context, the "clear and convincing" language addressed "the general burden of proof in postconviction proceedings with regard to factual contentions." *Id.*

The same is true here: The TCCA's opinion establishes that the court used the "clear and convincing evidence" language to refer to Petitioner's burden of proving factual allegations at the post-conviction evidentiary hearing. *Butler II*, 2019 4464652, at *7. The recitation of Petitioner's burden of proving factual allegations is separate from the TCCA's analysis of Petitioner's ineffective assistance of counsel claims. Therefore, the TCCA's use of this language does not "repudiate[]" the applicable governing law the TCCA subsequently cited and applied to Petitioner's claims. *Gosnell v. Hodge*, No. 2:07-cv-130, 2010 WL 3521748, at *5 (E.D. Tenn. Sept. 7, 2010) (holding "this Court does not find that the state court repudiated the governing rule in *Strickland* by its omissions of the words 'reasonable probability' from its recitation of the prejudice test").

The only other reference to "clear and convincing evidence" by the TCCA as pertaining to Petitioner's claims is its reference to Petitioner's failure to prove the factual allegations underlying his claim that trial counsel rendered ineffective assistance during plea negotiations by clear and convincing evidence. *Butler II*, 2019 WL 4464652, at *10. Accordingly, the Court finds that the TCCA cited the correct law governing Petitioner's ineffective assistance of counsel claims, and his allegation to the contrary fails to warrant habeas relief.

17

**C.**     **Ineffective Assistance of Counsel**

    **1.**     **Pretrial Investigation**

Petitioner asserts that trial counsel rendered ineffective assistance of counsel in failing to conduct an adequate pretrial investigation [Doc. 1 p. 7-11]. Specifically, he maintains that the surviving victim could not describe the person he believed committed the crime when he gave his initial statement; the murder weapons were not found where Simpson stated he and Petitioner had buried them; Petitioner's DNA was not on any of the recovered evidence; and there was testimony that the guns, ammunition, and bulletproof vest collected as evidence belonged to Moore. *Id.* He claims his counsel failed to conduct a reasonable pretrial investigation to explore these issues at trial. *Id.*

The AEDPA contains an exhaustion requirement, which requires a petitioner to present his habeas claim in state court "under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(b), (c). In Tennessee, a petitioner must present his federal claim to the TCCA in order to meet the AEDPA's exhaustion requirement. *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust State remedies).

On post-conviction appeal, Petitioner based his ineffective assistance claim on trial counsel's failure to properly investigate "known witnesses who would have exonerated" Petitioner; "locate and preserve" cell phone records to establish Petitioner's location during the crimes; and to investigate Petitioner's alleged alibi [Doc. 7-32 p. 26]. Therefore, the

18

theory of ineffective assistance based on counsel's investigation presented here "is separate and distinct from the one previously considered and rejected" by the TCCA. *Wong*, 142 F.3d at 322. Accordingly, this claim is not properly exhausted, as Petitioner deprived the state courts with the "opportunity to see both the factual and legal basis" for this claim. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009).

Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted by Tennessee's applicable statute of limitation and prohibition against successive petitions. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). The Court finds that Petitioner has failed to demonstrate any exception to the rules of procedural default is applicable, and this claim is, therefore, procedurally defaulted.

### 2. Plea Offer

Petitioner next maintains that trial counsel rendered ineffective assistance in failing to advise him of a plea offer to serve fifteen years, which he would have accepted absent counsel's failure to discuss it with him [Doc. 1 p. 13-14]. Petitioner argues that while the post-conviction court did not accredit trial counsel's testimony on this issue, it did accredit it on each and every issue adverse to Petitioner [*Id*. at 14].

19

Petitioner presented this claim on post-conviction appeal, and the TCCA, observing that *Strickland* applies to plea negotiations, addressed it as follows:

> The Petitioner testified that trial counsel conveyed a twenty-five-year offer that he did not accept. Trial counsel testified that he conveyed a fifteen-year offer to the Petitioner but that the Petitioner was not interested in the offer. The post-conviction court did not think that the State extended a fifteen-year offer to the Petitioner, reasoning that it was unlikely that the Petitioner, who was the alleged shooter, would have received a more favorable offer than codefendant Simpson, who was cooperating and was not the shooter. The court determined that absent any evidence to corroborate the fifteen-year offer, the evidence indicated that the offer was for twenty-five years. Accordingly, the post-conviction court found no clear and convincing evidence of deficiency in counsel's performance, and we conclude that nothing preponderates against the court's determination.

*Butler II*, 2019 WL 4464652, at *10.

Courts apply a *Strickland* analysis to a claim alleging counsel performed ineffectively in advising about a plea offer. *See Lafler v. Cooper*, 566 U.S. 156 (2012). Prejudice in this context turns on whether there is a reasonable probability the offer would have been accepted if counsel had performed effectively. *Id*. at 164. To answer that question affirmatively, Petitioner must establish:

> [T]hat but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* Here, the TCCA correctly cited the relevant law, and this Court must presume the Court knew and followed that law. *Holland*, 542 U.S. at 654-55.[4]

Additionally, the TCCA denied relief on *Strickland* performance principles, agreeing with the trial court that counsel did not perform deficiently because "it was unlikely" the State offered Petitioner, the accused shooter, a more favorable plea agreement than his cooperating co-defendant, Simpson. *Butler II*, 2019 WL 4464652, at *10. Rather, as the post-conviction trial court reasoned, it was more likely that there was one twenty-five year plea offer, counsel conveyed that offer (which Petitioner rejected), and then counsel misremembered the incident at the evidentiary hearing [Doc. 7-23 p. 119]. The trial court found that "[a]bsent corroboration of the fifteen-year offer," there was no "clear and convincing evidence of deficiency in [c]ounsel's performance" [*Id.*].

Petitioner bears the burden of proving his factual allegations, and this Court must defer to the State court's findings. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (finding reviewing court "is not as well positioned as the trial court is to make credibility determinations"). The trial court determined that trial counsel's recollection of the offer should not be credited, and Petitioner's questioning of that decision neither rebuts the State court's factual finding by clear and convincing evidence, nor does it show the factual

---

[4] Petitioner challenges the TCCA's use of "clear and convincing" language with regard to this claim. However, considering the factual reasoning immediately preceding the TCCA's use of the "clear and convincing" language, "a fair reading of the opinion is that the clear and convincing evidence addresses the general burden of proof in postconviction proceedings with regard to factual contentions[,]" which Petitioner failed to satisfy in this instance. *See Johnson*, 924 F.3d at 936 (internal quotations omitted) (quoting *Holland*, 542 U.S. at 654).

21

determination was unreasonable.[5]  *See, e.g., Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.

2013) (noting state court's factual findings presumed correct unless rebutted by clear and

convincing evidence).  Accordingly, the Court finds that Petitioner has not demonstrated

that the decision rejecting this claim warrants relief under the AEDPA.

### 3.    Cross-Examination of Co-Defendant Simpson

Petitioner next claims that trial counsel rendered ineffective assistance in failing to

adequately cross-examine Simpson about the circumstances surrounding Simpson's plea

and the information he provided to police [Doc. 1 p. 16-18].

After citing *Strickland* as the governing law, the TCCA addressed this claim on

post-conviction appeal, stating:

> The Petitioner claims that trial counsel rendered ineffective assistance by
> failing to cross-examine Simpson about the circumstances surrounding
> Simpson's plea agreement and the false information he provided to police.
> We conclude that the Petitioner has failed to show that he is entitled to relief.
>
> Trial counsel testified that on cross-examination, he elicited from Simpson
> that Simpson lied to the police about the Petitioner's involvement in the
> shooting. Trial counsel said that he decided not to cross-examine Simpson
> further because he was concerned that any further attempts at impeachment
> would risk Simpson's changing his mind again and offering unfavorable
> testimony. Trial counsel also was concerned that further cross-examination
> could open the door to additional portions of Simpson's statement to police
> being admitted into evidence. The post-conviction court found that trial
> counsel limited his cross-examination for fear of opening the door to more
> of Simpson's prior statements. Additionally, the court noted that trial counsel

---

[5] Despite finding that Petitioner has not carried his burden under the AEDPA with regard
to this claim, the Court notes that the State did not contradict trial counsel's testimony that a fifteen-
year plea deal was offered.  While the Court finds it unlikely that counsel would have conveyed
one offer to Petitioner but not another, more favorable offer, it nonetheless determines that
reasonable jurists could debate the correctness of the Court's ruling and will allow a certificate of
appealability to issue on this claim, as set forth in Part IV, *infra*.

cross-examined Sergeant Wenger about inaccuracies in Simpson's statements to police.

This court has previously noted that "cross-examination is a strategic and tactical decision of trial counsel which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). Moreover, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Given Simpson's history of contradictory statements, we conclude that trial counsel's strategy was reasonable, and we will not second-guess counsel's decision. We note, as did the post-conviction court, that trial counsel elicited additional impeachment of Simpson by questioning Sergeant Wenger about inaccuracies in Simpson's statements to police.

*Butler II*, 2019 WL 4464652, at *9, *11.

At the evidentiary hearing held during post-conviction proceedings, trial counsel recalled preparing to cross-examine Simpson, believing he would testify in accordance with the statement he gave to police that incriminated Petitioner [Doc. 7-29 p. 114]. Counsel remembered that Simpson refused first to testify and then testified that Petitioner "was in fact not involved," and "any [further] questioning" . . . "risked . . . mudd[y]ing those waters as well as risk him changing his mind again and testifying in accordance with the [prior] statement and saying things that would be damaging to" Petitioner [*Id.*].

Based on this record, the TCCA concluded that counsel had prepared to cross-examine Simpson and adjusted his strategy once Simpson recanted his prior statement. Such a decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Moreover, the fact that the State courts denied relief establishes that the courts accredited counsel's testimony over Petitioner's, and Petitioner has not established such a decision was unreasonable. *See Norwood v. Lebo*, No. 2:13-cv-2582, 2016 WL 4083506, at *14 (W.D.

23

Tenn. Aug. 1, 2016) (finding TCCA's use of counsel's testimony, rather than petitioner's, about counsel's performance to decide the claim's merits implied that the state courts accredited counsel's testimony over petitioner's). Therefore, the Court finds Petitioner has failed to establish that the rejection of this claim warrants relief under the AEDPA.

### 4. Advice Regarding Petitioner's Decision to Testify

Petitioner claims that trial counsel failed to adequately advise him concerning his right to testify in his own defense [Doc. 1 p. 18]. Specifically, Petitioner asserts that trial counsel told Petitioner that his misdemeanor criminal history could be used against him if he chose to testify, which counsel denied at the post-conviction hearing, claiming he advised Petitioner not to testify because he did not believe the jury would find Petitioner credible [*Id*. at 19]. Petitioner argues that this is nonsensical, as he was facing a life sentence, and he maintains that his testimony was just as credible as that of his attorney [*Id*. at 19].

Petitioner presented this claim to the TCCA on post-conviction appeal [Doc. 7-32 p. 35-36]. The TCCA, citing *Strickland*, addressed the claim as follows:

> The Petitioner argues that trial counsel rendered ineffective assistance by failing to advise him adequately about his right to testify. He asserts that trial counsel advised him that his misdemeanor criminal history could be used against him if he chose to testify.
>
> At the evidentiary hearing, trial counsel testified that he and the Petitioner discussed whether the Petitioner would testify and the Petitioner's right to testify. He said he advised the Petitioner not to testify because he did not think the jury would find his testimony credible. He said he did not tell the Petitioner that the State could question the Petitioner about his misdemeanor record if the Petitioner chose to testify.

The post-conviction court accredited trial counsel's testimony. The court noted that the defense's theory was misidentification and that presenting noncredible testimony would have made the Petitioner seem more like a dishonest perpetrator and less like an innocent victim of misidentification. The evidence does not preponderate against the findings of the post-conviction court.

*Butler II*, 2019 WL 4464652, at *12.

The record demonstrates that counsel advised Petitioner of his right to testify, advised him against exercising that right due to fear Petitioner would not appear credible, and that he did not base said advice on Petitioner's misdemeanor history, which he deemed irrelevant [Doc. 7-29 p. 135-36]. Petitioner's argument that his testimony was "just as credible" as his counsel's is conclusory and does not show how the TCCA's decision was unreasonable based on the facts in the record. *See Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) (finding conclusory allegations without evidentiary support cannot provide basis for habeas relief); *see also Norwood*, 2016 WL 4083506, at *14 (finding TCCA's use of counsel's testimony, rather than petitioner's, about counsel's performance to decide the claim's merits implied that the state courts accredited counsel's testimony over petitioner's). Accordingly, the Court determines that Petitioner has not demonstrated that the rejection of this claim warrants relief under the AEDPA.

### 5. Post-Conviction Counsel

Petitioner asserts that his post-conviction counsel failed to properly present the issues Petitioner identified in his pro se post-conviction petition, and that he failed to proceed with all of the issues that he raised himself in the amended petitions [Doc. 1 p. 22-23].

As this Court has previously noted, the ineffective assistance of post-conviction counsel at an initial-review collateral proceeding may provide cause to excuse a procedural default of a substantial claim of ineffective assistance of trial counsel. *See Martinez*, 556 U.S. at 9, 14. However, it does not provide a right to the effective assistance of post-conviction counsel. Rather, the AEDPA bars a petitioner from obtaining habeas relief based on a claim of ineffective assistance of post-conviction counsel. *See* 28 U.S.C. § 2254(i). Accordingly, this claim fails to warrant relief under the AEDPA.

### D.     Actual Innocence

Finally, Petitioner asserts failure to review any of his claims would result in manifest injustice [Doc. 1 p. 20-21]. As the Court previously noted, to avail himself of this exception, Petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray*, 477 U.S. at 496.

At the outset, the Court notes that actual innocence is not itself a substantive claim, as in federal habeas proceeding, the only cognizable grounds for relief are those that allege a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Currently, the "actual innocence" doctrine only serves as a mechanism to overcome procedural default of a claim; it has not been recognized as a free-standing constitutional claim in a habeas proceeding. *Herrera v. Collins*, 506 U.S. 390, 416-17 (1993); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence."). Therefore, any claim of actual innocence must be dismissed as a non-cognizable claim.

26

*Wallace v. Sexton*, 570 F. App'x 443, 454 (6th Cir. 2014) ("The Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim.").

Moreover, the Court has addressed each of Petitioner's claims and determined he has failed to excuse any defaulted claim by presenting new evidence to establish his factual innocence of the crimes. *See Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324. Therefore, this claim fails to offer Petitioner relief in this action.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Finding that reasonable jurists could debate the Court's conclusion as to whether counsel rendered ineffective assistance with regard to the plea offer, the Court

27

will allow Petitioner to pursue a COA on this ground. A COA will be denied as to all other claims.

## V.    CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A COA from this decision will be **GRANTED** on the sole issue of whether trial counsel rendered ineffective assistance in failing to advise Petitioner of a fifteen-year plea offer. A COA will be **DENIED** as to all other claims.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE